33 C.C.P.A. (Patents)

### Application of DE REAMER.
### Patent Appeal No. 5102.

Court of Customs and Patent Appeals.

March 6, 1946.

William L. Edmonston, of Washington, D.C., and Arthur Wm. Nelson, of Chicago, Ill., for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims Nos. 1 and 5 in appellant's application for a patent for an invention relating to a molded pulp pad "having rows of spaced apart cup-like substantially square receiving seats" thereon.

Claims numbered 4 and 7 in appellant's application were allowed by the Board of Appeals.

Claim 1 is illustrative of the appealed claims. It reads:

"1. A packing material in the form of a cushion pad embodying therein a rectangular sheet-like body portion having rows of spaced apart substantially square cup-like egg receiving seats thereon, each of a relatively shallow inverted pyramidal shape and including four full counterpart sides which meet at the corners of the seat and slope downwardly and inwardly from their upper base ends toward the center of the seat where they coact to form the bottom thereof, the mid portion of each side of each seat constituting the egg end engageable area therefor."

The allowed claims contain limitations which are not included in the claims on appeal, and the board was of opinion that those limitations warranted the allowance of those claims.

The reference is: Brigham et al., 2,168,317, August 8, 1939.

In appellant's structure, filler strips are spaced between upper and lower pads and separate the pad into the usual cells. Each of the cup-like egg supports or seats is substantially square and of a shallow inverted pyramidal shape, including, as stated in claim 1, "four full counterpart sides

which meet at the corners of the seat and slope downwardly and inwardly from their upper base ends toward the center of the seat where they coact to form the bottom thereof, the mid portion of each side of each seat constituting the egg and engageable area therefor." It is the square cuplike receiving seat which is the material part of the claims in issue.

The reference patent relates to packing material to be used in packing eggs or other fragile articles, and it is stated in the patent that eggs are packed in layers in cases or crates; that each layer is supported by a sheet of material known as a "flat"; and that each egg in each layer is separated from other eggs in the layer by strips, referred to as " 'fillers' or 'cell cases.' "

The patentees state:

"In our present invention, we arrange every alternate diagonal row of the individual egg supports of the flat of the Chaplin Patent No. 1,987,525 at right angles to the diagonal rows which are not re-arranged and thus produce through the sheet groups of four supports wherein two opposite supports have their major axis disposed in another diagonal direction of the sheet and at right angles to said first named pair."

The patentees were not attempting in their application to describe anything new in individual egg supports, but referred to the Chaplin Patent No. 1,987,525, issued January 8, 1935, as disclosing the individual egg supports. The patentees' invention relates to the manner in which the egg supports, disclosed in the Chaplin patent, are disposed on the pad, and, as argued by counsel for appellant, the claims of the reference patent call for "upstanding elongated article supports."

It is apparent from the drawings in the reference patent that the egg supports do not differ in any material degree from the structure shown in the Chaplin patent.

The patentee Chaplin states:

"My support consists in the main of a structural contouring which as here shown is diamond-shaped in appearance * * * but which may be otherwise shaped accordingly as the contours of the object to be packed may vary."

The patentee further states:

"It will be observed that the supports fabricated in the sheet of wet laid fibre are not really diamond-shaped but consist essentially of two opposed oppositely angled structural formations."

The egg supports of the Chaplin patent are shallow and of inverted pyramidal shape, and have four sides which slope downwardly and inwardly toward the center of the seat. Two diametrically opposed corners in the patentee's structure have cut-out portions or notches, which cause the egg receiving seat to appear to be diamond-shape, and the patentee states that in addition to providing means for introducing air at the bottom-most portion of the egg, the notches provide "a flexible or yielding section between the points" or edges of the walls immediately adjacent the notches so that when the points move outwardly the notches or slots open up, and when the points move inwardly the notches "automatically grow narrower."

Claim 2 of the Chaplin patent reads:

"2. A support for a fragile object, comprising two oppositely disposed pairs of side walls, each pair flexibly connected with each other at one end, a flexible connection between the other ends of said walls for outward and inward movements of said other ends, and a cradle suspended between said side walls for raising and lowering movements accordingly as said side walls are moved outwardly or inwardly by the insertion of a large or a small object into said cradle."

In rejecting the appealed claims, the Primary Examiner stated that the reference patent disclosed a pad having "substantially square cup-like egg receiving seats thereon," each seat being "of a relatively shallow inverted pyramidal shape and including four sides * * * which slope downwardly and inwardly from their upper base ends toward the center of the seat"; that the reference patent does not disclose four full counterpart sides, as called for by the appealed claims; that each of the egg receiving seats in the patent supports "the egg in the same manner as the seat in applicant's device"; and that it required a mere change in shape to make the egg receiving seats "of smaller diameter thereby permitting the sides to be substantially 'full counterpart' as defined in these claims."

On appeal, the Board of Appeals in its original decision stated that appellant's egg receiving seats are of inverted pyramidal shape; that the arrangement of the egg receiving seats in the patent is some-

what different from that in appellant's structure; that in the reference patent the seats are pyramidal in shape "having straight sides but two of the opposite corners of said sides are incomplete by reason of the large inset spaces" or notches; and that in the patent the egg rests on, and is supported at, four points, although the egg receiving seats or depressions ·do not have full counterpart sides as in appellant's structure.

In that decision, the board allowed claim 7 because of certain limitations contained therein, but affirmed the decision of the examiner as to claims 1, 4, and 5.

Upon request for reconsideration of its decision, the board stated that considerable stress had been placed on the alleged ·diamond-shape of the egg receiving seats ·of the reference patent; that a careful examination of the egg receiving seats in the reference patent "shows that they are square"; that in the patented structure, notches formed by eliminating two ·diametrically opposed corners give the egg receiving seats the appearance of being diamond-shape, "when they are actually square"; that "An egg positioned in such ·cavities [egg receiving seats] will be supported in exactly the same way as in appellant's cavities, that is, the sides of the pockets contact the egg tangentially"; and ·that, although the reference does not show four full counterpart sides in the egg receiving seats, that difference "does not affect the egg support."

The board then allowed claim 4 because ·of certan limitations contained therein, but affirmed the examiner's decision as ·to appealed claims 1 and 5.

Counsel for appellant here contend that the egg receiving seats disclosed in the reference and Chaplin patents are elongated in shape, and that each of the claims in the reference patent refer to them as being of that shape.

Although the Chaplin patent was not cited as a reference, it was incorporated in the record by appellant because of the fact that it.is stated in the reference patent that the patentees' arrangement includes the egg receiving seats disclosed in the patent to Chaplin.

It will be recalled that the notches in the diametrically opposed corners of the egg receiving seats were supplied in the Chaplin patent so that air might be introduced at ·the bottommost portion of the eggs, and

also to provide flexible or yielding sections or edges of the walls immediately adjacent the notches so as to accommodate either large or small objects; that when a large object is placed in the egg support, the edges adjacent the notches move outwardly causing the notches or slots to open up, and the bottom of the support to move upwardly "whereby effectively to bring the inclined surfaces of the cradle to meet the bottom of the large object and form an adequate area of support therefor"; and that when a small object is placed in the egg support, the edges adjacent the notches move inwardly and the notches "automatically grow narrower."

It appears from appellant's application that the egg receiving supports or seats are substantially square, having four full counterpart sides; that "downward endwise pressure on the egg will permit said sides to yield slightly to accommodate said pressure and this without permitting the seat to collapse because of the resistance offered by the strong angular structure formed at the corners of each pocket"; that because of the square shaped egg receiving seat, an egg may be placed therein with either end down; and that "no downward or inward rolling action can start at the ridges of the seats and therefore the seats cannot collapse. As the sides of the seats preclude any hard point contact engagement for the egg, the egg is not so easily broken and therefore the eggs and the packing material itself remain in a much better condition during shipment."

It is true, as argued by counsel for appellant, that appellant's seat construction is of "greater strength against distortion or axial crushing or collapse" than the patented structure; that his structure has a "plurality of accurately and uniformly spaced contact areas for the eggs so that the egg cannot so easily rock or tip out of position under impact against the side or the end of the case"; and that his structure provides for the circulation of air beneath the eggs "without the necessity of weakening the structure by notching as in the Brigham et al. reference."

Each of the tribunals of the Patent Office was of opinion that the egg receiving seats in the reference patent supports the egg in the same manner as in appellant's device.

We are not in agreement with that holding. We think it is apparent that the

notches formed in the diámetrically opposed corners of the walls in the patented structure form an egg receiving seat which, although supporting the egg at four points, permits the egg to rock or tip out of position, whereas with the four full counterpart sides, as in appellant's structure, the egg will be held firmly in position. Nor are we of opinion, in view of the notches formed in the diametrically opposed ·corners in the patented structure, that the egg receiving seat is actually square, as stated by the Board of Appeals.

The notches were designed in the Chaplin patent for the purpose of providing a flexible connection between the walls, as hereinbefore noted, and it was that feature which is claimed in the claims of the Chaplin patent. It is evident that the notches not only form a flexible connection between the walls, but also weaken the walls of the patented structure. Furthermore, the tribunals of the Patent Office permitted the patentees Brigham et al. to claim in each of the claims of their patent that the egg supporting seats were "upstanding elongated article supports." It is obvious, therefore that at the time of the issuance of that patent, the tribunals of the Patent Office were not ·of opinion that the egg supporting seats which Brigham et al. borrowed from the Chaplin patent were actually square.

It is argued here by the Solicitor for the Patent Office thàt even if it be true that the egg supporting seats in the reference patent are not square, "the change to the form of appellant's device was not a change in kind, but merely a change in degree and it is well settled that there is no invention in making such a change." In support of that argument, the solicitor cites the case of In re Williams, 36 F.2d 436, 17 C. C. P. A., Patents, 718.

We think it is apparent from what has been said that appellant's structure and mode of operation are not the same as in the reference patent, and that his structure is not a mere carrying forward of the patentees' conception involving merely a "change of form, proportions, or degree, or the substitution of equivalents." On the contrary, it differs materially from the disclosure in the reference patent, and is not suggested thereby. Accordingly, the decision in the Williams case, supra, is not applicable to the issues here presented.

For the reasons stated, we are of opinion that the Board of Appeals erred in rejecting the appealed claims. Its decision is, therefore, reversed.

Reversed.

33 C.C.P.A.(Patents)

### In re LEE.
### Patent Appeals No. 5111.

Court of Customs and Patent Appeals.
March 6, 1946.

James T. Kline, of Bridgeport, Conn., for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.